

O'Melveny & Myers LLP
1301 Avenue of the Americas
Suite 1700
New York, NY 10019-6022

T: +1 212 326 2000
F: +1 212 326 2061
omm.com

February 4, 2026

**Jonathan Rosenberg**
D: +1 212 408 2409
jrosenberg@omm.com

**VIA ECF**

The Honorable Henry J. Ricardo
United States Magistrate Judge
500 Pearl Street, Room 701
New York, NY 10007

Re:    ***Wang v. Essence International Financial Holdings Limited*, Case No. 1:24-cv-08204-VEC-HJR**

Dear Judge Ricardo:

We represent Defendant Essence International Financial Holdings Limited ("Essence International"), and respectfully write under the Court's February 2, 2026 order (ECF No. 66) to oppose Plaintiff's February 1, 2026 letter motion (ECF No. 65) seeking leave to file a third amended complaint. Plaintiff's motion mirrors the request he raised in his opposition (*see* ECF No. 59 at 1 n. 1 and 13 n. 5) and should be denied as futile for the reasons explained in Essence International's reply in further support of its motion to dismiss the Second Amended Complaint (*see* ECF No. 60 at 10–11), and as further explained in this letter.

Courts routinely deny leave to amend when the proposed amendment is futile, such as when the amendment seeks to add a time-barred claim. *See e.g., 421-A Tenants Ass'n, Inc. v. 125 Ct. St. LLC*, 760 F. App'x 44, 51 (2d Cir. 2019) (affirming "denial of leave to amend the complaint as to the statute of limitations issues" because related prior lawsuit and press coverage put plaintiffs on inquiry notice of their claims); *Jennis v. Rood*, 310 F. App'x 439 (2d Cir. 2009) (holding that "proposed amendment of complaint was futile where the statute of limitations had run"). Here, Plaintiff seeks leave to amend to assert an untimely common-law fraud claim. As explained in Essence International's reply, New York's borrowing statute subjects that proposed claim to California's three-year common-law-fraud limitations period, which starts running on the date Plaintiff learned or was put on notice of the alleged proxy misrepresentations or omissions about relisting. (*See* ECF No. 60 at 10–11.) Plaintiff disputes none of this. Further, California law provides that constructive notice is all that is required to start the limitations period running: "constructive and presumed notice or knowledge are equivalent to knowledge" and "when the plaintiff has notice or information of circumstances to put a reasonable person on inquiry, or has the opportunity to obtain knowledge from sources open to [his] investigation (such as public records or corporation books), the statute commences to run." *Kline v. Turner*, 87 Cal. App. 4th 1369, 1374 (2001) (cleaned up).

O'Melveny

Plaintiff was put on notice of the alleged misrepresentations or omissions by the initial related class-action complaint filed in the Delaware Court of Chancery on August 10, 2020,[1] and the China Securities Regulatory Commission ("CSRC") filings in 2021 about Highpower's relisting in China.  In fact, the proposed Third Amended Complaint relies heavily on those very documents.  (*See* ECF No. 65–1 p. 1 and ¶¶ 31, 71–72.)  Because those filings were more than three years before Plaintiff filed his October 25, 2024 initial complaint in this action, his proposed common law fraud claim is time-barred.

Plaintiff's claims have always centered on the alleged relisting "flip" scheme (*see* SAC ¶¶ 3–5，33, 66, 69), and his proposed common-law claim is no different.  (*See* ECF No. 59 at 1 n. 1 (stating that common-law fraud claim is "based on the same misstatements that underlie the time-barred Section 10(b) claim").  That same "flipping" theory was the centerpiece of the public version of the August 10, 2020 Delaware complaint against the same defendant, Essence International.  (*See* ECF No. 22, Ex. 17 ¶¶ 22, 27, 29.)  This alone placed Plaintiff on inquiry notice, rendering his common-law fraud claim untimely under California law since August 11, 2023.

The 2021 CSRC filings provided further notice by January or June, 2024 (also more than three years before Plaintiff filed this action).  On January 20, 2021, the CSRC published Essence Securities' record filing disclosing that Shenzhen Highpower planned to conduct an IPO on a domestic stock exchange in China and had accepted Essence Securities as its IPO sponsor.  (*See* ECF No. 22, Exs. 6, 7.)  Plaintiff relied on Essence Securities' regulatory filings in this lawsuit (*see* SAC p. 1 and ¶ 67) and alleged that the "flip" scheme "included appointing Essence [International]'s parent company, Essence Securities Co. Ltd, to act as [Highpower's] IPO underwriter" in China (*id*. ¶¶ 6, 33).  That January 20, 2021 filing thus would have allowed a reasonable plaintiff to connect the dots between Essence International's participation in the going-private transaction and Essence Securities' sponsor role in Highpower's relisting, and likewise placed Plaintiff on notice of his common-law fraud claim, making that claim stale no later than January 20, 2024.  The CSRC's June 22, 2021 publication of the Shenzhen Highpower application draft prospectus further reinforced the inquiry notice.  The prospectus disclosed in detail Highpower's relisting and restructuring steps (*see* ECF No. 22, Ex. 8 at 1-1-72–77), and Plaintiff relied on those facts to suggest that a relisting plan had existed before the going-private transaction closed (*see* SAC ¶¶ 31, 67).

Plaintiff argues in his letter motion and alleges in his proposed Third Amended Complaint that he could not have discovered certain "particularized facts" or "details" of Highpower's undisclosed relisting plan until the July 28, 2023 public version of the second amended complaint (attached herein as Exhibit A) was filed in the Delaware action.  But he does not (i) identify what "particularized facts" or "details" the July 28, 2023 complaint revealed; (ii) explain how those unidentified details materially advanced the already disclosed operative facts, and why he could not have pleaded the same "flipping" scheme without them; or (iii) explain why a reasonably diligent investigation could not have discovered the marginal additional facts.  *See*

---

[1] *John Styslinger & Dale Raimann v. Dang Yu (George) Pan, et al.*, Case No. 2020-0651-PAF (Del.Ch.) (Dkt. No. 1).

*Doe v. Roman Cath. Bishop of Sacramento*, 189 Cal. App. 4th 1423, 1430 (2010) ("In assessing the sufficiency of the allegations of delayed discovery, the court places the burden on the plaintiff to show diligence; conclusory allegations will not withstand demurrer.") (internal quotation marks omitted). In fact, that complaint advanced the same "flipping" scheme theory raised in the initial complaint (*cf.* Exhibit A ¶¶ 34, 39, 41 and ECF No. 22, Ex. 17 ¶¶ 22, 27, 29), with additional allegations focusing primarily on Pan's undeniable control over Highpower (*see* Exhibit A ¶¶ 51–68).

While the Delaware action's July 28, 2023 complaint added a footnote alleging that "the Proxy falsely represented that Defendant Dang Yu Pan did not begin communicating with Essence [International] until late October 2018 regarding its possible involvement in the future Buyout Group" (Exhibit A at 58 n. 13), Plaintiff has never challenged that disclosure in this case. And even if the unspecified "particularized facts" somehow would allow Plaintiff to elaborate on why a relisting plan had existed before the transaction closed, the statute of limitations begins to run even where public "disclosures do not . . . perfectly match the allegations that a plaintiff chooses to include in its complaint." *Yaroni v. Pintec Tech. Holdings Ltd.*, 600 F. Supp. 3d 385, 399 (S.D.N.Y. 2022); *accord In re Magnum Hunter Res. Corp. Sec. Litig.*, 616 F. App'x 442, 447 (2d Cir. 2015) ("[W]e have never permitted the statute of limitations to be tolled until [the corrective] disclosures touch on every specific allegation that a plaintiff chooses to put in his complaint."); *State of California ex rel. Metz v. CCC Info. Servs., Inc.*, 149 Cal. App. 4th 402, 416 (2007) (Inquiry notice "avoids the undue delay and opportunistic behavior that would tend to result from a rule that required awareness of every fact necessary for a fraud claim."); *In re Infonet Servs. Corp. Sec. Litig.*, 310 F. Supp. 2d 1106, 1119 (C.D. Cal. 2003) ("Inquiry notice is triggered by evidence of the possibility of fraud, not full exposition of the scam itself." (*quoting Sterlin v. Biomune Sys.*, 154 F.3d 1191, 1203 (10th Cir. 1998))).

Nor does the fraudulent concealment doctrine help Plaintiff. "With fraudulent concealment, the delayed discovery must be the result of the defendant's intentionally preventing the plaintiff from instituting suit." *Calhoun v. Roca*, 2022 WL 1447551, at *11 (Cal. Ct. App. May 9, 2022); *see also Guerrero v. Gates*, 442 F.3d 697, 706–07 (9th Cir. 2006) ("[F]raudulent concealment, halts the statute of limitations when there is 'active conduct by a defendant, above and beyond the wrongdoing upon which the plaintiff's claim is filed, to prevent the plaintiff from suing in time.' The plaintiff must demonstrate that he relied on the defendant's misconduct in failing to file in a timely manner and 'must plead with particularity the facts which give rise to the claim of fraudulent concealment.'"). Plaintiff pleads no active concealment by Essence International that prevented him from filing a timely common-law fraud claim, and the public filings placing him on inquiry notice render inapplicable the fraudulent concealment doctrine. *See Calhoun*, 2022 WL 1447551, at *11 ("[T]he doctrine of fraudulent concealment for tolling the statute of limitation does not come into play, whatever the lengths to which a defendant has gone to conceal the wrongs, if a plaintiff is on notice of a potential claim.") (internal quotation marks omitted).

Pro se status is not a license to squander limited judicial resources. For the reasons stated above, Plaintiff's request for leave to file a third amended complaint should be denied.

O'Melveny

Respectfully submitted,

*/s/ Jonathan Rosenberg*

Jonathan Rosenberg

Attachment: Exhibit A—Verified Second Amended Class Action Complaint (public version filed July 28, 2023)